UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. JAMES,<br><br>    Plaintiff,<br><br>    v.<br><br>COMCAST CORPORATION, et al.,<br><br>    Defendants. | Case No. 16-cv-02218-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 16 |

## I.   INTRODUCTION

On April 4, 2016, Plaintiff John C. James filed a putative class action against Defendants Comcast Corporation and Comcast Cable Communications, LLC (collectively, Comcast), alleging that Comcast failed to provide credits and/or refunds to month-to-month customers during the times when Comcast did not provide uninterrupted service. Docket No. 1 (Compl.) at ¶ 1. Comcast filed the instant motion to compel arbitration and to dismiss, or, in the alternative, to stay the action pending the completion of arbitration. Docket No. 16 (Mot.).

Comcast's motion came on for hearing before the Court on August 4, 2016. For the reasons set forth below, the Court **GRANTS** Comcast's motion to compel arbitration and to dismiss this action.

## II.   BACKGROUND

James is a month-to-month customer who began his subscription account with Comcast around September 26, 2003. *See* Docket No. 17 (Hill Dec.) at ¶ 5. Comcast states that it is its regular and routine practice to provide a Welcome Kit to new subscribers. Docket No. 18 (Kane

Dec.) at ¶ 7. The Welcome Kit would include a copy of the existing Subscriber Agreement. *Id.*[1] Comcast would also provide California customers with an annual notice pursuant to 47 C.F.R. § 76.1602, and a Subscriber Agreement would be included with this annual notice. Docket No. 19 (Peling Dec.) at ¶ 5.

In 2011, Comcast added an arbitration provision to its Service Agreement (the 2011 Arbitration Provision). In July 2011, Comcast sent a notice containing the full text of the 2011 Arbitration Provision with their monthly bills. Kane Dec. at ¶ 12. With respect to James, Comcast's contractor CSG Systems, Inc. mailed the billing insert with the 2011 Arbitration Provision to James on July 17, 2011, along with his bill dated July 16, 2011. Docket No. 31 (Rouse Dec.) at ¶¶ 8, 10. The arbitration provision was contained on a notice, the first page of which stated in red, bold-print: "IMPORTANT NOTICE REGARDING COMCAST AGREEMENTS FOR RESIDENTIAL SERVICES." Kane Dec., Exh. B (2011 Arbitration Provision Notice) at 1. The next page stated: NOTICE FROM COMCAST REGARDING REVISED AGREEMENTS FOR RESIDENTIAL SERVICES INCLUDING ARBITRATION PROVISION, and provided a link to Comcast's revised agreements. *Id.* at 2. The notice stated that the new "agreements, including their arbitration provision, replace and supersede any prior agreement for residential services between you and Comcast including any prior provision concerning arbitration." *Id.* (all-caps removed). It further explained that the agreements would take effect thirty days after mailing, unless the user opted out. Failure to opt out would indicate acceptance of the agreements. The notice also stated that a decision to opt out would have no adverse impact on a user's relationship with Comcast or the delivery of services. *Id.*

James did not exercise his option to opt out of the 2011 Arbitration Provision, but continued to use Comcast's services. Kane Dec. at ¶ 17. James contends that he never received the 2011 Arbitration Provision Notice. Docket No. 23 (James Dec.) at ¶ 10. However, James paid his July 2011 bill with which the Notice would have been included. Kane Dec. at ¶ 14.[2]

---

[1] The 2003 Subscriber Agreement was not provided, and at the hearing on this matter, Comcast represented that the 2003 Subscriber Agreement could not be located in its records.

[2] Comcast also relies upon a receipt signed by James in March 2016, in which the signatory

2

### III. DISCUSSION

#### A. Standard of Review

The Federal Arbitration Act (FAA) provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, in determining the validity of any agreement to arbitrate, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) (citation and internal modifications omitted). In the instant case, the contract provides that "the Federal Arbitration Act ('FAA'), not state arbitration law, shall govern the arbitrability of all Disputes." 2011 Arbitration Provision at ¶ (e). However, both parties in their briefing apply California law in discussing contract formation, and the Court will do the same. *See* Docket Nos. 22 (Opp.) at 8; 29 (Reply) at 2, 5-6.

#### B. Contract Formation

"The right to compel arbitration stems from a contractual right." *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1000 (N.D. Cal. 2012) (citation and internal quotations omitted). Therefore, a party may not be bound to an arbitration agreement to which he or she has not agreed to submit. *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643 (1986). The party seeking to compel arbitration has the burden of proving the existence of an agreement by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 395, 413. The existence of an

---

"agree[d] to be bound by the Comcast subscriber agreement(s) which constitute the agreement between myself and Comcast for the XFINITY service(s)." Docket No. 17 (Hill Dec.), Exh. 5 (May 2016 Receipt). However, as discussed during the hearing, the Court is not convinced the receipt properly incorporated by reference the current Subscriber Agreement. In California, incorporation by reference requires that the reference "be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. The Regents of the Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997). Here, Comcast did not provide a clear and unequivocal reference to the Subscriber Agreement, instead simply referring to a generic "subscriber agreement(s)." Comcast also did not provide a link to the Subscriber Agreement at issue, nor did it otherwise specifically incorporate any particular document. Notably, the Comcast website itself no longer uses the term "Subscriber Agreement" but instead uses "Customer Agreement," making it difficult for the Court to find that the reference to "subscriber agreement(s)" constitutes a clear and unequivocal reference. *See* Comcast Agreement for Residential Services, http://www.xfinity.com/Corporate/Customers/Policies/SubscriberAgreement.html (last visited August 4, 2016). For that reason, the Court focuses its analysis on the 2011 Arbitration Provision.

3

agreement usually rests on a showing of offer and acceptance. Cal. Civ. Code §§ 1550, 1565, 1580.

The Court finds that the 2011 Arbitration Provision Notice constitutes a stand-alone contract, which by its terms superseded any prior contracts. In that sense, the 2011 Arbitration Provision Notice acted as a novation, or a "*substitution* by agreement of a new obligation for an existing one, with intent to *extinguish the latter*." 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 961, p. 1052 (Witkin). As a general matter, "the parties to a contract are free to determine for themselves their respective rights and liabilities so long as the purposes and effects of their agreement are lawful." *Howard v. Cnty. of Amador*, 220 Cal. App. 3d 962, 977 (1990). Thus, "parties to an existing contract may, through mutual consent, modify or rescind their agreement." *Id.* For purposes of a novation, "there are four essential requisites: First, a previous valid obligation; second, the agreement of all the parties to the new contract; third, the extinguishment of the old contract; and fourth, the validity of the new one." *Airs Int'l v. Perfect Scents Distibs.*, 902 F. Supp. 1141, 1147 (N.D. Cal. 1995). "Essential to a novation is that it 'clearly appear' that the parties intended to extinguish rather than merely modify the original agreement." *Howard*, 220 Cal. App. 3d at 977.

Here, the Court finds that there was a novation. First, there was a prior valid agreement, whether it was the original 2003 agreement or a later agreement. Second, all of the parties agreed to the 2011 Arbitration Provision, as Comcast "offered" the 2011 Arbitration Provision Notice terms (which required acceptance of the current Service Agreement and the 2011 Arbitration Provision) and James "accepted" by continuing to use his Comcast services without opting out. While James disputes acceptance because he contends that he never received the agreement, the Court finds his denial to be implausible. Here, Comcast has provided specific evidence that it included the notice of the 2011 Arbitration Provision with James's July 2011 bill. *See Rouse* Dec. at ¶¶ 8, 10.[3] Moreover, although James contends that he did not receive the notice, he does not

---

[3] James objects to Rouse's declaration on the ground that Comcast has failed to lay the proper foundation regarding any 2003 agreement, arguing that therefore Rouse's declaration is irrelevant to the motion. Docket No. 35 at 4. However, the Court finds that the 2011 Arbitration Agreement was a valid novation, and thus the failure to provide the 2003 agreement is not at issue. Further,

1 provide any evidence in support of his denial or dispute that he paid the July 2011 bill that the
2 notice was sent with.  *See* Kane Dec. at ¶ 14.  James's bare denial is insufficient to show that he
3 never received the agreement, and the Court has some skepticism of James's credibility, given that
4 he has disputed receiving *any* copy of the Subscriber Agreement between 2003 and 2011, despite
5 Comcast's assertion that it had a practice of including the current Subscriber Agreement with the
6 annual notice that Comcast sent to subscribers every year between 2003 and 2011.  The Court
7 does not believe it is realistic that James would have failed, for eight consecutive years, to receive
8 the Subscriber Agreement.[4]  Thus, having considered the evidence, the Court finds that James did
9 receive the 2011 Arbitration Provision Notice, and that he accepted its terms -- including the 2011
10 Arbitration Provision -- when he continued to use Comcast's services without opting out.[5]
11 *Compare with Craig v. Brown & Root*, 84 Cal. App. 4th 416, 421-22 (2000) (upholding the trial
12 court's finding that the plaintiff was bound by an arbitration agreement because although the
13 plaintiff denied receipt, the trial court could reasonably determine that the defendant's declarations
14 and documents showing that the items were mailed to the plaintiff and not returned demonstrated
15 receipt); *Papudesi v. Northrup Grumman Corp.*, B235730, 2012 Cal. App. Unpub. LEXIS 8715,
16 at *9-10 (Nov. 29, 2012) (finding acceptance of arbitration policy despite the plaintiff's denial of
17 receipt because the human resources director declared the policy was sent to the plaintiff, and the

---

the portions of Rouse's declaration that the Court relies upon go to receipt, which is clearly relevant to this motion.

[4] James's refusal to even acknowledge that the March 2016 receipt has his signature further undermines his credibility.  *See* James Dec. at ¶ 11.

[5] Further, under the federal common law mailbox rule, "proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time."  *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001).  Applying the mailbox rule, several courts in this district have found that an arbitration agreement was validly assented to.  *E.g.*, *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1196 (N.D. Cal. 2012) (finding valid arbitration agreement because the mailbox rule created a rebuttable assumption that the agreement was received, and plaintiff failed to rebut that presumption); *Chavez v. Bank of Am.*, 2011 U.S. Dict. LEXIS 116630, at *17 (N.D. Cal. Oct. 7, 2011) (finding valid arbitration agreement because -- although the presumption created by the mailbox rule is stronger when the delivery is made by certified mail -- there still needed to be actual evidence of non-receipt to rebut the presumption).

plaintiff offered no evidence rebutting the presumption).[6]  Significantly, in addition to the ability to opt-out of the arbitration agreement, James's contract was a month-to-month contract rather than a fixed term contract; if James wanted to avoid agreeing to the new contract, he had the ability simply to end his business relationship with Comcast.  Instead, James neither exercised his opt-out right nor ended his business relationship with Comcast, evidencing his agreement to be bound by the 2011 Arbitration Agreement.  *Compare with Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (2012) ("Plaintiff could have opted out of her entire credit agreement with Citibank at or after November 2003, when Citibank issued a new agreement containing an arbitration clause and opt-out opportunity, upon acquiring her account from Sears.  Instead, plaintiff accepted Citibank's terms through her subsequent use of the card.").

Third, the Court finds that the 2011 Arbitration Provision Notice clearly meant to extinguish the prior agreements.  The notice specifically states that the agreements referenced therein, including their arbitration provision, "replace and supersede *any prior agreement* for residential services between you and Comcast including any prior provision concerning arbitration. . . . Any prior agreement you have or had with Comcast terminates on the effective date, and is replaced with these agreements."  2011 Arbitration Provision Notice at 2 (all-caps removed).  The Notice then included links to the specified agreement.  Thus, by its plain language, the 2011 Arbitration Provision was designed to extinguish the prior agreements and leave in place an agreement containing an arbitration agreement.

Finally, as discussed below, the Court finds that the 2011 Arbitration Provision itself is a stand-alone contract.  Thus, the Court concludes that the 2011 Arbitration Provision Notice was a valid novation, and that James agreed to be bound by it when he continued to use Comcast's services without opting out.

C.       Enforceability of the Contract

The FAA requires courts to enforce arbitration agreements "save upon such grounds as

---

[6] "Although unpublished California cases have no precedential value, they may be considered 'as a possible reflection of California law.'" *Valencia v. Volkswagen Grp. of Am. Inc.*, 119 F. Supp. 3d 1130, 1140 n.2 (N.D. Cal. 2015) (quoting *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011)).

6

exist at law or in equity for the revocation of any [] contract." 9 U.S.C. § 2. In other words, an agreement to arbitrate may be invalidated by generally applicable contract defenses, making this a matter of state law. *Mohamed v. Uber Techs., Inc.*, 109 F. Supp.3d 1185, 1212 (N.D. Cal. 2015); *Concepcion*, 131 S.Ct. 1740, 1746 (2011). The party asserting the defense -- here, James -- bears the burden of proving the defense applies. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

### 1. Unconscionability

James argues that the arbitration agreement is unconscionable. For Plaintiff to successfully employ an unconscionability defense, the Court must find some degree of both procedural and substantive unconscionability in the agreement at hand. *Pokorny*, 601 F.3d at 996; *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). However, it is not required that they exist to the same degree -- rather, a sliding scale is applied, such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs, Inc.*, 24 Cal. 4th 83, 114 (2000).

Here, the Court finds that the contract is not unconscionable because there is no procedural unconscionability. Procedural unconscionability focuses on oppression and surprise. *Id.* The key inquiry in establishing the existence of oppression is showing unequal bargaining power and lack of meaningful choice on the part of one party. *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *1 (N.D. Cal. June 25, 2014). Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the form drafted by the party seeking to enforce the disputed terms. *Id.*; *Tri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231, 245 (2014). However, "failing to highlight" does not equal "hide" with respect to arbitration provisions. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015).

Here, the Court finds that there is no oppression for several reasons. First, there was a valid opt-out provision. While James argues that this is a contract of adhesion, the Ninth Circuit has found that there is no contract of adhesion when an individual is given the opportunity to opt-out. *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002). Second, while the

California Supreme Court in *Gentry v. Superior Court* noted that in some circumstances, a person like the plaintiff in *Gentry* might not feel free to opt out when the materials provided to the plaintiff made it "unmistakably clear that [the employer] preferred that the employee participate in the arbitration program," 42 Cal. 4th 443, 471-72 (2007), here, the arbitration agreement made it clear that opting out would have *no* adverse effect on the customer-service provider relationship or the delivery of services. 2011 Arbitration Provision Notice at 2 ("Your decision to opt out of this arbitration provision will have no adverse effect on your relationship with Comcast or the delivery of services to you by Comcast") (all-caps omitted). Third, the contract at issue was not between an employer and a relatively unsophisticated as in *Gentry*, but one between a consumer and an internet service provider. This case concerns a non-essential service, not a source of one's livelihood. Further, James does not suggest that he lacked any alternatives or that he was completely dependent on Comcast in order to receive internet service.[7] Finally, James was a month-to-month customer and thus had even more flexibility to not only opt out of the contract but to end his relationship with Comcast entirely. James was not trapped in a fixed term contract and stuck with an arbitration position; he could cancel his month-to-month contract at any time, without penalty. Thus, the Court concludes that there was no oppression.[8]

The Court also finds that there was no surprise. The 2011 Arbitration Provision was not buried but contained in a stand-alone notice, the first page of which stated in bold, red, all-caps font that it was an "important notice." 2011 Arbitration Provision Notice at 1. The first sentence on the next page stated that the notice concerned an arbitration provision, also in all-caps and bold font. *Id.* at 2. This was not a situation where the arbitration provision was hidden. While James suggests that the 2011 Arbitration Provision was hidden because it was included with the July

---

[7] While the Court recognizes that "this circuit has consistently followed the courts that reject the notion that the existence of "marketplace alternatives" bars a finding of procedural unconscionability," *Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1085 (9th Cir. 2008), the availability of alternatives further highlights the lack of oppression in the instant case.

[8] At the hearing, James argued that the arbitration agreement failed to highlight the disadvantageous terms of the arbitration agreement. However, following the California Supreme Court's decision in *Sanchez*, which found that a defendant had no duty to specifically call the arbitration clause itself to a plaintiff's attention, it is doubtful that a defendant would be required to highlight the disadvantageous terms. *See* 61 Cal. App. 4th at 914.

1    2011 bill, rather than a stand-alone document, the notice was designed to alert the recipient of the
2    change, and thus was not hidden.[9] While there is a line of California cases that have found that a
3    bill stuffer is procedurally unconscionable, these cases focused on the oppression from the lack of
4    a meaningful opt out where the consumer was deemed to accept an arbitration agreement if he did
5    not close his account entirely. *See Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002)
6    (finding procedural unconscionability in arbitration clause presented by bill stuffer because it was
7    presented on a "take it or leave it" basis, thus making it oppressive); *Hoffman*, 546 F.3d at 1085
8    ("although 'bill stuffer' amendments are not per se unconscionable, a California court has held
9    that a 'bill stuffer' that includes a class arbitration waiver provision that the customer is deemed to
10   accept unless she closes her account is procedurally unconscionable") (internal citation omitted).
11   By contrast, another California court found no procedural unconscionability where an arbitration
12   agreement was presented in a bill stuffer but there was a meaningful opportunity to opt out. *See*
13   *Citibank, N.A. v. Walker*, 2008 Cal. App. Unpub. LEXIS 7199, at *16-17 (2008) (finding that
14   arbitration clause presented in a bill stuffer was not procedurally unconscionable because there
15   was a meaningful opt-out); *see also Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1200,
16   n.12 (explaining that even where an arbitration agreement is presented in a bill stuffer, "[t]his does
17   not present the same take it or leave it scenario found to be procedurally unconscionable in
18   *Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148 . . . ."). James has not cited any California case which
19   holds that a bill stuffer constitutes surprise per se, particularly where the stuffer was a clear stand-
20   alone notice designed to command the attention of the consumer.
21            In sum, the Court concludes that there is no procedural unconscionability given the

---

[9] To the extent that James relies on *Martin v. Comcast*, 209 Ore. App. 82 (2006), it is not clear that the facts are similar. While both *Martin* and the instant case involve a "bill stuffer," the 2011 Arbitration Provision Notice here was specifically designed to be noticed, including language in all red caps on the first page and a second page which on the first three lines, stated in all caps, bold print that there was an arbitration clause. By contrast, it was not clear what the bill stuffer in *Martin* said as the notice was not provided to the court. *Id.* at 86. *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998), is also distinguishable because it concerned a bill stuffer that the trial court found was not designed to achieve knowing consent to the arbitration provision, and contained wording that the appellate court determined was "far from the direct, clear and unambiguous language required to alert a customer that by maintaining the status quo he or she is waiving an important constitutional right." *Id.* at 805.

9

1  combination of the following factors: (1) the 2011 Arbitration Provision Notice was designed to
2  stand out, including a first page in red, bold, all-caps lettering and a second page in bold, all-caps
3  lettering stating that there was an arbitration provision; (2) the 2011 Arbitration Provision
4  contained a meaningful opt-out which specifically stated that customers could opt out without any
5  adverse effect on their relationship with Comcast or the delivery of services provided by Comcast;
6  (3) the contract at issue could easily be terminated by James, given that it was a month-to-month
7  contract; (4) the contract involved a non-essential service, unlike a contract e.g. for medical
8  services or employment, thus reducing any inherent pressure to not exercise the opt-out right; and
9  (5) James does not suggest that he lacked alternatives to Comcast's internet services. Considering
10 all of these factors together, the court finds that the 2011 Arbitration Provision is not procedurally
11 unconscionable and therefore does not inquire into substantive unconscionability.[10]

### 2. Public Policy

James also argues that the 2011 Arbitration Provision is unenforceable because it waives claims brought under the Private Attorney General Act (PAGA). Specifically, the 2011 Arbitration Provision states:

> All parties to the arbitration must be individually named. There shall be no right or authority for any claims to be arbitrated or litigated on a class action or consolidated basis or on bases involving claims brought in a purported representative capacity on behalf of the general public (such as a private attorney general), other subscribers, or of persons similarly situated.

2011 Arbitration Provision Notice at ¶ (f)(2). As a general matter, there is a rule against waiver of PAGA claims, and both California and the Ninth Circuit have found that this rule is not preempted by the FAA. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 427 (9th Cir. 2015). However, PAGA is a labor statute, while the contract at issue is a consumer agreement between James and his internet provider. Thus, the 2011 Arbitration Provision would not cover PAGA

---

[10] The Court notes its concern with the 2011 Arbitration Provision's requirement that the AAA's commercial arbitration rules apply. However, at the hearing, Comcast represented that the commercial arbitration rules would not apply, but that the AAA would require that the consumer arbitration rules apply.

claims to begin with, as it is limited to a consumer contract and thus consumer disputes.[11]  The Court concludes that the 2011 Arbitration Provision is not void as a matter of public policy.

### IV.    CONCLUSION

The Court finds that a valid, enforceable arbitration agreement was made between James and Comcast, and therefore **GRANTS** Comcast's motion to compel arbitration.  The Court will in the meantime stay the case in its entirety.  9 U.S.C. § 3.

This order disposes of Docket No. 16.

**IT IS SO ORDERED**.

Dated: August 15, 2016

_____
EDWARD M. CHEN
United States District Judge

---

[11] Further, to the extent that the provision could be read to include PAGA claims specifically, the provision is easily severable as the 2011 Arbitration Provision provides that "[i]f any clause within this Arbitration Provision is found to be illegal or unenforceable, that clause will be severed from this Arbitration Provision, and the remainder of this Arbitration Provision will be given full force and effect."  2011 Arbitration Provision Notice at ¶ (i).  While this paragraph goes on to say that the entire Arbitration Provision will be unenforceable if the class action waiver clause is found to be illegal or unenforceable, this is limited to the class action waiver, not the representative action waiver, and thus severance can apply.